HARRY SADIGUR, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25482.)

Court of Claims, March 7, 1946.

*Markus Krauthamer*, for the claimant.

*John J. Bennett, Jr., Attorney-General [Martin P. O'Leary, Assistant Attorney-General*, of counsel], for the defendant.

GREENBERG, J. Claimant sues to recover excess premiums paid by his assignor to the State Insurance Fund. The State has made a motion to dismiss the claim upon the ground that the State Insurance Fund is an independent governmental authority or unit, and is not an agency of the State of New York, and that,

as such, the fund, and not the State, is liable to the claimant for damages caused by a breach of contract entered into by and between the fund and the claimant's assgnor. It is claimant's contention that in the absence of any express legislative provision, waiving immunity from suit no action may be brought against the fund, and, therefore, claimant may sue pursuant to the provisions of the Court of Claims Act.

The State Insurance Fund is an inherent part of the State of New York, and more particularly, constitutes a bureau of the Department of Labor of the State of New York. The State is liable for damages caused by the fund in the same measure as it is responsible for the damages caused by any other bureau of the State. The Legislature has not consented to suits being brought against the fund and, therefore, the fund may not be sued. Claimant's only remedy is against the State in the Court of Claims.

A consideration of the historical background of the Insurance Fund may be of some aid in the determination of the question before the court.

In 1911 the Court of Appeals in *Ives* v. *South Buffalo Railway Co.* (201 N. Y. 271) held unconstitutional " An act to amend the Labor Law, in relation to workmen's compensation in certain dangerous employments," being chapter 674 of the Laws of 1910. In 1913 the People adopted section 19 of article 1 of the State Constitution (now section 18 of article 1) which provides as follows: " Nothing contained in this Constitution shall be construed to limit the power of the Legislature to enact laws for the protection of the lives, health, or safety of employees; or for the payment, either by employers, or by employers and employees or otherwise, either directly or through a State or other system of insurance or otherwise, of compensation for injuries to employees or for death of employees resulting from such injuries without regard to fault as a cause thereof." Pursuant to this provision of the Constitution, the Legislature enacted the Workmen's Compensation Law (Laws of 1914, chap. 41), as a means of securing compensation for injuries or death of employees arising in the course of and out of their employment.

Article 5 (now article 6) of the original Workmen's Compensation Law (Laws of 1914, chap. 41) provided for the creation and administration of a State Insurance Fund to assure the payment of such compensation. Section 90 thereof provided as follows: " § 90. Creation of State Fund. There is hereby created a fund to be known as ' the State insurance fund,' for the purpose of insuring employers against liability under this chapter and of assuring to the persons entitled thereto the compensation provided by

this chapter. Such fund shall consist of all premiums received and paid into the fund, of property and securities acquired by and through the use of moneys belonging to the fund and of interest earned upon moneys belonging to the fund and deposited or invested as herein provided. *Such fund shall be administered by the Commission without liability on the part of the State beyond the amount of such fund.* Such fund shall be applicable to the payment of losses sustained on account of insurance and to the payment of expenses in the manner provided in this chapter." (Italics supplied.) The Commission referred to means the Workmen's Compensation Commission as constituted by subdivision 2 of section 3 and sections 60 through 76 of chapter 41 of the Laws of 1914. Section 91 provided that the State Treasurer shall be custodian of the State Insurance Fund and all disbursements therefrom shall be paid by him upon vouchers authorized by the Commission and signed by any two members thereof. Section 99 provided that actions for the collection of premiums shall be brought in the name of the People of the State of New York. Section 75 required the Workmen's Compensation Commission to make an annual report relating to the fund to the Legislature.

The Labor Law was amended by chapter 674 of the Laws of 1915 and contained the following provisions: Section 40 was amended to provide that there should be a Department of Labor, the head of which should be the Industrial Commission, consisting of five members. Section 42 provided that there should be a Bureau of Workmen's Compensation in the Department of Labor which should be subject to the supervision and direction of the Industrial Commission. Section 4 of said chapter 674 provided that the State Workmen's Compensation Commission created as provided in section 60 of the Workmen's Compensation Law should be abolished; all the powers, duties, obligations and liabilities conferred or imposed by law upon the Workmen's Compensation Commission by the Workmen's Compensation Law were conferred and imposed upon the Industrial Commission; that the State Industrial Commission should be deemed to be a continuation of such Workmen's Compensation Commission. Section 7 provided that references in the law to the Workmen's Compensation Commission should be deemed to mean the Industrial Commission.

Section 10 of chapter 50 of the Laws of 1921, which is the Labor Law of the State of New York, provided that there shall continue to be in the State government a Department of Labor and that the Industrial Commissioner shall be the head of the Department. By subdivision 2 of section 21 the administration of the Workmen's Compensation Law was made the duty and responsibility of the

Industrial Commissioner. By section 19 the Commissioner was given the power to appoint as many persons as might be necessary to perform the duties of referees in workmen's compensation. By section 20 it was provided that existing divisions of bureaus in the Department of Labor shall be continued until changed, consolidated or abolished.

The original Workmen's Compensation Law of 1914 was generally amended by chapter 615 of the Laws of 1922. Section 90 was amended to read as follows: " § 90. Creation of State fund. There is hereby created a fund to be known as ' the State insurance fund,' for the purpose of insuring employers against liability under this chapter and of assuring to the persons entitled thereto the compensation provided by this chapter. Such fund shall consist of all premiums received and paid into the fund, of property and securities acquired by and through the use of moneys belonging to the fund and of interest earned upon moneys belonging to the fund and deposited or invested as herein provided. Such fund shall be applicable to the payment of losses sustained on account of insurance and to the payment of expenses in the manner provided in this chapter. *Such fund shall be administered by the Industrial Commissioner.*" (Italics supplied.) There is omitted from the original section 90 the sentence providing " such fund shall be administered by the Commission without liability on the part of the State beyond the amount of such fund."

Section 91 was amended to provide that the State Treasurer should be the custodian of the State Industrial Fund and that all disbursements therefrom should be paid by him upon vouchers signed by the Commissioner. Section 94 was amended to provide that the Industrial Commissioner should file an annual report of the administration of the fund with the Legislature and that all appointments to positions in the State Insurance Fund should be made subject to civil service requirements. Section 99 was amended to provide that actions to collect premiums should be brought in the name of the Industrial Commissioner.

By section 2 of chapter 255 of the Laws of 1935, original article 5 of the Workmen's Compensation Law was renumbered article 6 and by chapter 585 of the Laws of 1938 the sections of article 6 were renumbered and generally amended. Section 76 thereof (formerly section 90) provides as follows: " § 76. Creation of State fund. *There is hereby continued in the Department of Labor a fund* known as ' the State insurance fund,' for the purpose of insuring employers against liability for personal injuries or death sustained by their employees and of assuring to the persons entitled thereto the compensation and benefits provided by this chapter or by

any act providing for compensation now or hereafter enacted by the Congress of the United States of America if such liability is incident to an employment carried on in this State. Such fund shall consist of all premiums received and paid into the fund, of property and securities acquired by and through the use of moneys belonging to the fund and of interest earned upon moneys belonging to the fund and deposited or invested as herein provided. Such fund shall be applicable to the payment of losses sustained on account of insurance, to the payment of expenses in the manner provided in this chapter and to the payment of premiums for reinsurance in any insurance corporation of the whole or any part of any policy obligations." The last sentence of former section 90 providing that " such fund shall be administered by the Industrial Commissioner " was omitted. By section 77 it was provided in substance that the State Insurance Fund should be administered by the Commissioners of the State Insurance Fund, of whom there should be eight; that the Industrial Commissioner should be a Commissioner of such fund by virtue of his office; the office of manager of the State Insurance Fund and the advisory committee thereof were abolished. Section 82 provides for the appointment of an executive director who shall, subject to the direction of the Commissioners, be responsible for the direction and operation of the State Fund. Section 84 provides for the appointment of a general attorney. Section 85 provides that the Commissioner of Taxation and Finance shall be the custodian of the State Insurance Fund and that all disbursements therefrom shall be paid by him upon vouchers signed by the executive director. Section 88 provides that the entire expenses of administering the State Fund should be paid out of such fund; that there may not be expended for the State Insurance Fund for purpose of administration more than the amounts specified in the budget for each item of expenditures except as authorized by the Director of the Budget; that the Industrial Commissioner shall include in his annual report to the Legislature a statement of the Commissioners showing the expenses of administering the State Fund for the preceding year; that all appointments to positions in the State Insurance Fund shall be made subject to civil service requirements. Before the enactment of chapter 585 of the Laws of 1938, the Industrial Commissioner was the sole administrator of the State Insurance Fund, and under section 91 of the old law, he was required to sign all vouchers; the Commissioner delegated such authority to officers of the State Insurance Fund who were familiar with the law relating thereto and the needs of the State Insurance Fund; his right to delegate such authority was predicated on section

24 of the Labor Law, and section 85 of the Workmen's Compensation Law was amended to continue this practice. Section 93 provides that actions for the collection of premiums in arrears shall be brought in the name of the Industrial Commissioner.

It is apparent from the background and the history above cited, that the State Insurance Fund is an integral part of the Department of Labor; that it is not a separate and distinct governmental unit; that although it operates more or less independently of the Industrial Commissioner, it is nevertheless an inherent part of the Department of Labor. The fund is not given by statute the attributes and power of an independent governmental unit and the statute which creates it does not mention the power to sue or be sued except to recover premiums in arrears.

The contention of the Attorney-General that the fund is an instrumentality of the State created in aid of the State's function under the Workmen's Compensation Law and to which the State has delegated governmental power for the performance of its functions, and that the fund exercises its independent authority, as delegated, and that this court does not have jurisdiction of the claim herein for the reason that the fund and not the State is responsible for its breach of contract, is unsound.

The State is sovereign and, therefore, is immune from suit unless it expressly consents thereto. The officers, departments, divisions, bureaus and all other agencies of the State, including municipal corporations, enjoy the same immunity from suit as the State itself. (*Matter of Hoople*, 179 N. Y. 308; *People* v. *Dennison*, 84 id. 272; *Metropolitan Trust Co.* v. *State Board of Tax Commissioners*, 220 id. 344; *MacMullen* v. *City of Middletown*, 187 id. 37.)

It is quite immaterial whether the agency in question is independent or dependent on some State department or whether it has broad or restricted powers. The significant attribute which exposes the agency to suit is an express waiver of immunity by the Legislature.

The State relies primarily upon the decision in the case of *Pantess* v. *Saratoga Springs Authority* (255 App. Div. 426). However, this case must be read and considered in the light of the decision of the same court in the case of *Spa Baths Co.* v. *Board of Commissioners* (98 Misc. 399; affd., 181 App. Div. 960). The defendant in the *Spa Baths Co.* case is the predecessor of the defendant in the *Pantess* case. The distinction between the two cases lies in the fact that in the *Pantess* case the statute creating the defendant provided that it might sue and be sued; in the *Spa Baths Co.* case, the decision was expressly based upon the principle that the suit therein was against a State board and, therefore, could not be

brought, since in reality it was against the State itself; the statute creating the Board of Commissioners of the State Reservation was silent as to the power to be sued; in the absence of an express permission to bring suit the State agency is immune and permission to be sued may not be implied.

In the case of *Martha Dietrich* v. *Palisades Interstate Park Comm.* (114 Misc. 425) the complaint alleged that the defendant owned and operated a steamer as a common carrier for passengers for hire; that the plaintiff was injured by reason of the negligence of the defendant while a passenger on such steamer. The defendant moved to dismiss the complaint upon the ground that the Supreme Court did not have jurisdiction of the person of the defendant or of the subject of this action. The defendant, Palisades Interstate Park Commission, was created for the purpose of acquiring and maintaining a park for the enjoyment of the People. The statute creating the Commission provided that it should have the power to sue and be sued. The court held, in dismissing the complaint, that while the statute waived the immunity from suit, it did not impose any liability upon the defendant for damages for negligence in the performance of a public duty. To the same effect is the decision in the case of *George Dietrich* v. *Palisades Interstate Park Comm.* (114 Misc. 429). The distinction made by the court in these cases is the same as the distinction made by the Court of Appeals in *Smith* v. *State* (227 N. Y. 405), wherein the court held that although the State had waived its immunity from suit no liability had been imposed upon the State by the statute in question.

The case of *Pennell* v. *Home Owners' Loan Corp.* (21 F. Supp. 497) is distinguishable from the case at bar on the same ground as the *Pantess* case, to wit, an express provision waiving immunity is contained in the Home Owners Loan Act. In the case of *Schiff* v. *Home Owners' Loan Corp.* (168 Misc. 498) the court denied a motion to dismiss the complaint against the Home Owners' Loan Corporation in an action based upon tort, upon the ground that the act of Congress creating the defendant had waived its immunity from suit. The statute creating the defendant provides that it " shall have authority to sue and to be sued in any court of competent jurisdiction, Federal or State." (U. S. Code, tit. 12, § 1461.)

It thus appears from the above-cited authorities that a governmental agency or unit, regardless of whether its powers are plenary or restricted, may not be sued unless the Legislature has expressly waived the immunity from suit. The statute creating the State Fund does not contain any provision waiving the immunity of

the fund from suit, and that omission is significant of the intention that it should not be sued but that liabilities growing out of its acts should be the liabilities of the State. Express permission to be sued not having been given, permission may not be implied.

Accordingly, the motion to dismiss the claim is hereby denied. Submit order accordingly.

BARRETT, P. J., concurs.